IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIMMIE CALVIN ANDERSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20CV145 |
| HEAD NURSE CYNTHIA, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This prisoner civil rights action filed under 42 U.S.C. § 1983 comes before the Court on an unopposed Motion for Summary Judgment [Doc. #35] filed by Defendant "Head Nurse Cynthia" ("Defendant"). Plaintiff Jimmie Calvin Anderson ("Plaintiff") is proceeding *pro se*. For the reasons set out below, Defendant's Motion for Summary Judgment should be granted, and this action should be dismissed with prejudice.

Plaintiff filed this action related to his time as a pretrial detainee formerly held in the Surry County Jail. Plaintiff originally raised claims against the Surry County Sheriff and Head Nurse Cynthia based on allegedly inadequate medical treatment while at the Jail. The Sheriff previously filed a Motion to Dismiss, which was granted, and the only remaining claim is against Defendant Head Nurse Cynthia.

In his Complaint [Doc. #2], Plaintiff alleges that, shortly after being arrested on September 24, 2018, he was seen by "Nurse Cynthia at Surry County Jail" for complaints of urinating blood and, at that time, he advised Nurse Cynthia that his complaints were possibly

related to cancer and that he had already scheduled appointments for procedures. (Compl. [Doc. #2] at 3-4). He claims that Nurse Cynthia did not offer him any treatment. (Compl. at 4.) However, Plaintiff also alleges that, on approximately October 1, 2018, "Nurse Cynthia had the Plaintiff transferred to Central Prison in Raleigh, North Carolina for medical safe keeping," and that he received medication while at Central Prison. (Compl. at 4.) Plaintiff's Complaint further alleges that, after he returned to the Surry County Jail in January 2019, he did not receive any further medical treatment, despite continued problems and continued complaints by Plaintiff to Nurse Cynthia. (Compl. at 4.) However, Plaintiff also notes that, in April 2019, he was taken to Northern County Medical Center for medical procedures, and, during a follow-up, he was told that he had cancer. (Compl. at 4-5.) Plaintiff was then transferred to Central Prison for safekeeping and, while there, he received treatment at Chapel Hill's North Carolina Cancer Center. (Compl. at 5.) Plaintiff alleges that he was told that his cancer was at Stage 4. (Compl. at 5.) Plaintiff alleges that if had received prompt and adequate medical treatment from Nurse Cynthia, his cancer would not have spread to this latter stage. (Compl. at 5-6.)

Defendant filed her Motion for Summary Judgment on August 1, 2022. Defendant has presented an affidavit and medical records reflecting that Defendant was booked into the Surry County Jail on September 22, 2018, was screened by nursing staff, and reported that he was being treated for an enlarged prostate and that he took Flomax, Neurontin, and Ambien. (Felts Aff. [Doc. #37] at 2 (citing [Doc #37-1] Ex. 1, at 1-5).) The nursing staff sent a request for information to Plaintiff's pharmacy to obtain verification of his medications, and also sent a request for information to Northern Urology to obtain copies of Plaintiff's medical records

2

for treatment of his enlarged prostate. (Felts Aff. [Doc. #37] at 2 (citing [Doc #37-1] Ex. 1, at 64-65).) Those records showed a recent screening on September 20, 2018, that was "worrisome for transitional cell carcinoma" with a recommendation for continued follow-up with Northern Urology. (Felts Aff. [Doc. #37] at 3 (citing [Doc #37-1] Ex. 1, at 103-12).) Nursing staff offered Plaintiff the opportunity for follow-up with Northern Urology, but on September 25, and again on September 27, Plaintiff declined the recommended resection procedure by Northern Urology, and by handwritten note, Plaintiff said the bleeding had stopped and he wanted to wait to do the procedure after he was no longer in jail, and that if the bleeding started again "maybe we can do it then." (Felts Aff. [Doc. #37] at 3 (citing [Doc #37-1] Ex. 1, at 9-10).) Plaintiff refused a medical history and assessment on October 2, 2018, and was transferred that day to Central Prison for medical safekeeping, 10 days after his arrest. (Felts Aff. [Doc. #37] at 3-4 (citing [Doc #37-1] Ex. 1, at 11, 22).)

The affidavit and records reflect that Plaintiff was seen regularly at the Central Prison Urology Clinic and UNC Hospitals and was later transferred back to Surry County Jail three months later on January 7, 2019. (Felts Aff. [Doc. #37] at 4 (citing [Doc #37-1] Ex. 1, at 22, 55-56).) The next day, an order was entered to continue him on the medications he had been prescribed while at Central Prison: carbamazepine, finasteride, and tamsulosin. (Felts Aff. [Doc. #37] at 4 (citing [Doc #37-1] Ex. 1, at 22).) Plaintiff submitted a sick-call slip on March 11, 2019, and was seen two days later on March 13, 2019. (Felts Aff. [Doc. #37] at 4 (citing [Doc #37-1] Ex. 1, at 12-15).) Nurse Felts examined Plaintiff, performed a urine dip, and contacted Plaintiff's urologist. (Felts Aff. [Doc. #37] at 4 (citing [Doc #37-1] Ex. 1, at 13-15).) Plaintiff submitted another sick-call slip on March 15, 2019, and was seen that day.

3

Nursing staff performed another urine dip and tried to contact Plaintiff's urologist, but the office was closed. (Felts Aff. [Doc. #37] at 4 (citing [Doc #37-1] Ex. 1, at 13-17,19).) Nursing staff ultimately were able to make an appointment for Plaintiff to be seen by his urologist 18 days later, on April 2, 2019. (Felts Aff. [Doc. #37] at 5 (citing [Doc #37-1] Ex. 1, at 117-22).) Following that appointment, he was recommended for further procedure and was taken to a pre-operative appointment on April 8, 2019, and then for the procedure on April 10, 2019. (Felts Aff. [Doc. #37] at 5 (citing [Doc #37-1] Ex. 1, at 20, 123-39).) He was diagnosed with prostatic adenocarcinoma. (Felts Aff. [Doc. #37] at 5 (citing [Doc #37-1] Ex. 1, at 20, 123-39).) He was released from the hospital on April 11, 2019, and was placed on observation every 15 minutes at the Jail. (Felts Aff. [Doc. #37] at 5-6 (citing [Doc #37-1] Ex. 1, at 123-39, 34-43).) On April 17, 2019, he was transported back to Northern Urology for a follow-up appointment and was cleared to return to the general population. (Felts Aff. [Doc. #37] at 6 (citing [Doc #37-1] Ex. 1, at 21).) On April 23, 2019, he reported blood in his urine, and Nurse Felts contacted Northern Urology, and he was taken that day for further testing by Northern Urology. (Felts Aff. [Doc. #37] at 6-7 (citing [Doc #37-1] Ex. 1, at 21).) The next day, Plaintiff was transported to Central Prison for medical safekeeping. (Felts Aff. [Doc. #37] at 7 (citing [Doc #37-1] Ex. 1, at 21).)

The Court mailed Notice of the Motion [Doc. #38] to Plaintiff's address of record to inform him that a response was due within 30 days, that he may be required to file affidavits to dispute facts, and that a failure to respond "may cause the court to conclude that the defendant's contentions are undisputed and/or that you no longer wish to pursue this matter." Plaintiff did not file an opposition.

Local Rule 7.3 provides that "[i]f a respondent fails to file a response [to a motion] within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." LR 7.3(k). Having reviewed the record in this case, the Court concludes that Plaintiff's claims are subject to dismissal pursuant to Local Rule 7.3 on Defendant's Motion for Summary Judgment in light of Plaintiff's failure to respond to the Motion.

Moreover, having considered the Motion for Summary Judgment on the merits, the Court finds that Plaintiff has not presented any evidence that would create a genuine issue of material fact, and the undisputed evidence presented by Defendant reflects that there was no violation of Plaintiff's constitutional rights. As the Fourth Circuit has explained:

> "A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L.Ed.2d 271 (1991) (internal quotation marks omitted).
>
> A claim of inadequate medical care has both a subjective and objective element; "[t]he plaintiff must demonstrate that the [defendant] acted with deliberate indifference (subjective) to the inmate's serious medical needs (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An inmate alleging deliberate indifference must establish that his medical condition was objectively serious—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). The inmate also must establish the subjective element, namely that the official subjectively knew of and disregarded an excessive risk to the inmate's health or safety. Jackson, 775 F.3d at 178.
>
> Once prison officials are aware of a serious medical need, they only need to "respond[] reasonably to the risk." Farmer v. Brennan, 511 U.S. 825, 844, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

5

> Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. 1970. To find the prison officials liable, the treatment given must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Hixson v. Moran, 1 F.4th 297, 302-03 (4th Cir. 2021).

Here, the evidence reflects that immediately upon his admission to the Surry County Jail, Plaintiff was medically screened, his medical records were requested, and he was offered the opportunity for a follow-up appointment and procedure with his urologist, which he specifically refused. Even still, 10 days after his admission to the jail, he was transferred to Central Prison for medical safekeeping. Nothing in the record related to his treatment over that 10-day period reflects any disregard or indifference to Plaintiff's medical needs. The evidence further reflects that Plaintiff was returned to the Surry County Jail three months later in January 2019, and continued receiving his prescribed medication. He did not submit any requests for medical treatment or assessment until March 2019, and when he did request a medical visit in March 2019, he was seen promptly and was then taken for further appointments, testing, and procedures by his treating urologist within 18 days. After the procedures, he was monitored every 15 minutes and once cleared was transferred back to Central Prison for medical safekeeping, within two weeks of the testing and procedures. There are no claims in this case related to his treatment at Central Prison, and the undisputed evidence in this case reflects that he was treated promptly, including with repeated transports to his own treating urologist, during his time at the Surry County Jail. With respect to any failure to conduct testing or procedures in September 2018, Plaintiff specifically refused those tests and procedures prior to his transfer for medical safekeeping. After his return in early

6

2019, the only period of time for which he was not receiving intensive medical attention was from January to early March 2019, but during that time he continued to receive the medication prescribed to him following his treatment and assessment at Central Prison medical safekeeping, and during that time he did not request any medical visits or other medical evaluation or treatment. Plaintiff has not presented any evidence of any delay in treatment by Nurse Felts or any refusal of treatment or medication, and the undisputed record reflects prompt treatment upon every request, including consultation and appointments with his own treating urologist. In the circumstances, Plaintiff has not presented any genuine issue of material fact to support a claim of deliberate indifference to his serious medical needs at the Surry County Jail. Therefore, Defendant is entitled to judgment as a matter of law.

For all of these reasons, the Court will recommend that Defendant's Motion for Summary Judgment be granted and that this case be dismissed.

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #35] be GRANTED, and that this case be dismissed with prejudice.

This, the 16th day of February, 2023.

                                          /s/ Joi Elizabeth Peake
                                          United States Magistrate Judge